UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

LAWRENCE NASH, *et al.*,

                              Plaintiffs,                    **DECISION AND ORDER**

          -against-                                         19-cv-9138 (AEK)

COUNTYWIDE CARTING, LTD,
*doing business as* CW MAINTENANCE, INC.,
*et al.*,

                              Defendants.
-------------------------------------------------------------x

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.[1]**

          The operative pleading in this matter is the Second Amended Complaint ("SAC"), which

was filed by plaintiffs Lawrence Nash, Anthony Cirello, Matthew Powell, Raymond Clark,

Darryl Payne, Lonnie Whatley, and Fritz Michel (collectively, "Plaintiffs") on December 22,

2020.  In the SAC, Plaintiffs assert claims against defendants Countywide Carting, LTD

("Countywide"), and Morris Jacobowitz (collectively, "Defendants") for violations of the Fair

Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") based on Defendants'

alleged failure to pay overtime wages, failure to provide wage notices, and failure to provide

accurate wage statements.  *See* ECF No. 49.  Before the Court is the parties' application for

approval of a settlement agreement in accordance with *Cheeks v. Freeport Pancake House, Inc.*,

796 F.3d 199 (2d Cir. 2015).  For the reasons that follow, the Court APPROVES the settlement

agreement.

---

[1] The parties have consented to the Court's jurisdiction pursuant to 28 U.S.C. § 636(c).
ECF No. 71.

**DISCUSSION**

In the Second Circuit, "parties cannot privately settle FLSA claims with a stipulated

dismissal with prejudice under Federal Rule of Civil Procedure 41 absent the approval of the

district court or the [United States] Department of Labor." *Fisher v. SD Prot. Inc.*, 948 F.3d 593,

599 (2d Cir. 2020).  Thus, a district court in this Circuit must review a proposed FLSA

settlement and determine whether it is fair and reasonable.  *See, e.g.*, *Cronk v. Hudson Valley*

*Roofing & Sheetmetal, Inc.*, No. 20-cv-7131 (KMK), 2021 WL 38264, at *2 (S.D.N.Y. Jan. 5,

2021).  When reviewing a proposed settlement agreement in an FLSA case, district courts

consider the "totality of circumstances," *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335

(S.D.N.Y. 2012), to assess whether the agreement is fair and reasonable, including the following

factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the
> settlement will enable the parties to avoid anticipated burdens and
> expenses in establishing their respective claims and defenses; (3) the
> seriousness of the litigation risks faced by the parties; (4) whether the
> settlement agreement is the product of arm's-length bargaining between
> experienced counsel; and (5) the possibility of fraud or collusion.

*Fisher*, 948 F.3d at 600 (quoting *Wolinsky*, 900 F. Supp. 2d at 335).  In addition, the following

factors "weigh against approving a settlement":

> (1) the presence of other employees situated similarly to the claimant; (2)
> a likelihood that the claimant's circumstance will recur; (3) a history of
> FLSA non-compliance by the same employer or others in the same
> industry or geographic region; and (4) the desirability of a mature record
> and a pointed determination of the governing factual or legal issue to
> further the development of the law either in general or in an industry or in
> a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (quotation marks omitted).  "[T]here is a strong presumption in

favor of finding a settlement fair, as the Court is generally not in as good a position as the parties

to determine the reasonableness of an FLSA settlement."  *Xiao v. Grand Sichuan Int'l St. Marks,*

2

*Inc.*, No. 14-cv-9063, No. 15-cv-6361 (RA), 2016 WL 4074444, at *2 (S.D.N.Y. July 29, 2016) (quotation marks omitted).

Having reviewed the parties' submissions in support of the proposed settlement, having presided over a settlement conference in this matter at which the parties were able to address certain outstanding issues—a process that involved extensive discussion about the merits of the case—and having considered the totality of the circumstances, the Court finds that the parties' settlement agreement is fair and reasonable.

All five *Wolinsky* factors weigh in favor of approval. First, the settlement agreement provides for a total settlement payment of $85,000, with $62,723.39 payable to Plaintiffs and $22,276.61 payable to Plaintiffs' counsel as attorneys' fees and costs. *See* ECF No. 81 ("*Cheeks* Letter") at 1; ECF No. 81-1. Plaintiffs assert that were they to prevail at trial on all their claims, they would receive a total of $212,736.63—$64,688.02 in backpay, a total of $91,735.97 in penalties (including liquidated damages) under the FLSA and NYLL, and $56,312.64 in interest payments, minus payments already made by Defendants to three Plaintiffs for lost overtime (as paid through damages assessed by the New York State Department of Labor). *Cheeks* Letter at 2. The aggregate amount payable to Plaintiffs constitutes approximately 29 percent of the total amount to which Plaintiffs claim that they would have been entitled had they prevailed at trial, and approximately 97 percent of the total alleged backpay owed.[2] The settlement amounts for each Plaintiff consist of the following:

---

[2] The *Cheeks* Letter states that the settlement figure of $85,000, "which necessarily includes the attorneys' fees and costs," is 40 percent of Defendants' total exposure at trial. ECF No. 81 at 2. But it is the standard practice in this District to calculate this figure using the contemplated payment *to the plaintiff—i.e.*, the payment "net" of attorneys' fees and costs. Accordingly, the Court evaluates the propriety of this proposed settlement using the amount of the award that is payable to the Plaintiffs.

| Plaintiff | Settlement Amount | Percentage of Potential Recovery at Trial | Percent of Backpay Owed |
|-----------|-------------------|-------------------------------------------|-------------------------|
| Nash | $13,736.56 | 36.6% | 148.8% |
| Cirello | $5,419.53 | 36.0% | 273.4% |
| Clark | $6,104.02 | 36.1% | 117.1% |
| Powell | $8,766.01 | 36.4% | 117.5% |
| Whatley | $9,982.84 | 36.4% | 110.0% |
| Payne | $9,564.37 | 23.2% | 67.7% |
| Michel | $9,150.06 | 18.1% | 52.0% |

*See* ECF Nos. 81-1, 81-2.

These percentages of recovery—both in the aggregate, and for each individual Plaintiff—are in line with recovery amounts in other FLSA cases in this District where courts have approved settlement terms. *See, e.g.*, *Santos v. YMY Mgmt. Corp.*, No. 20-cv-1992 (JPC), 2021 WL 431451, at *1 (S.D.N.Y. Feb. 8, 2021) (approving settlement where plaintiff's recovery was "approximately 18% of Plaintiff's total alleged damages and approximately 39% of his total alleged minimum wage and overtime owed," and noting that "[c]ourts in this District routinely award settlement amounts within this range.") (collecting cases). Plaintiffs' counsel has provided detailed calculations that serve as the basis for the settlement amounts, *see* ECF No. 81-2, and discussed these calculations at length with the Court during the settlement conference process. Moreover, the *Cheeks* Letter adequately explains why the recoveries for Plaintiffs Payne and Michel are comparably lower, particularly when viewed in terms of the percentage of backpay owed, as compared to the other five Plaintiffs. ECF No. 81 at 4-5. As set forth in the *Cheeks* Letter, and as also discussed at length with the Court during the settlement conference,

Plaintiffs' counsel has represented that Plaintiff Payne voluntarily contributed $3,500 of what would have been his *pro rata* share of the settlement proceeds, and Plaintiff Michel voluntarily contributed $7,800 of what would have been his *pro rata* share of the settlement proceeds, to increase the settlement amounts for the other Plaintiffs.[3]  *Id.* at 5.  Plaintiffs Payne and Michel (along with the other five Plaintiffs) have each separately and individually signed the proposed settlement agreement.  *See* ECF No. 81-3.

Second, the settlement will enable to parties to avoid significant additional expenses and burdens associated with establishing their claims and defenses.  While the parties have conducted some discovery to date, it is clear from the *Cheeks* Letter, *see* ECF No. 81 at 2-3, that a substantial amount of additional discovery, followed by motion practice, would have been necessary before any trial in this matter.

Third, both sides would have faced significant litigation risks if this case had proceeded to trial.  Plaintiffs acknowledge that there is "uncertainty" in the number of hours they worked, as detailed records do not exist aside from possible GPS tracking data that would be difficult to obtain and analyze.  *Cheeks* Letter at 2-3.  Plaintiffs also note that Defendants would likely file a motion for summary judgment on the ground that Countywide was exempt from paying overtime pursuant to the federal Motor Carrier Act, which would require extensive briefing and discovery. *Id.* at 3.  At trial, Plaintiffs would face a number of risks that could greatly reduce their best case scenario damages outcome, including the potential challenge of obtaining liquidated damages based on Defendants' willful behavior in light of Defendants' practice of paying flat salaries.  In addition, it is not clear whether Plaintiffs would be entitled to the full amount of interest

---

[3] If these voluntary contributions were added back into the total recoveries for Plaintiffs Payne and Michel (and proportionally subtracted from the totals of the other five Plaintiffs), the percentage recoveries for all seven Plaintiffs would have been approximately equivalent.

payments that they are seeking, and there is a real risk that Defendants would not have the ability to pay a potential judgment. *Id.* at 3-4. Were this matter to proceed, Defendants would also face risks and would inevitably incur significant costs—their summary judgment motion is not certain to succeed, and even in the best case scenario for Defendants, litigation here would require a large expenditure of attorneys' fees for discovery and motion practice. Trial in this matter also would have presented clear litigation risks for Defendants given Plaintiffs' anticipated testimony about the work they performed. Because of the anticipated risks and costs involved in pursuing this matter through discovery and trial, settlement is an effective means of resolving the litigation for all parties.

Fourth, the Court presided over the settlement conference and therefore observed firsthand that the proposed settlement is the product of arm's-length bargaining between experienced counsel.

Fifth, the Court has no reason to believe that the proposed settlement is the product of fraud or collusion.

Moreover, none of the factors set forth in *Wolinsky* that weigh against approving a settlement exist in this case. The parties represent that all employees with potential viable federal claims have been included as plaintiffs, and the Court is not aware of any other employees who are similarly situated to the Plaintiffs. *See Cheeks* Letter at 6. Additionally, according to the parties, Defendant Countywide has used a timeclock to record hours of work since March 2018, which "minimiz[es] risk of further potential violations." *Cheeks* Letter at 6. The Court is not aware of a history of FLSA non-compliance by this employer, and while the legal issue involving the Motor Carrier Act is somewhat distinct, the potential for further

development of that narrow and fact-intensive issue is not so compelling as to outweigh the

benefits of settlement in this case.

The proposed settlement agreement also does not contain any problematic provisions that

would preclude court approval.  First, the proposed settlement agreement contains a release that

is appropriately limited to "any claim regarding unpaid or improperly paid wages."  ECF No. 81-

3 at ¶ 2.a; *see Illescas v. Four Green Fields LLC*, No. 20-cv-9426 (RA), 2021 WL 1254252, at

*1 (S.D.N.Y. Apr. 5, 2021).  Second, there are no confidentiality provisions in the proposed

agreement.  Third, while the proposed agreement includes a non-disparagement clause, it allows

both parties to make truthful statements.  *See* ECF No. 81-3 at ¶ 7 (Plaintiffs and Defendants

each agree "not to make any *false* statement" about the other (emphasis added)).  Courts in this

district have approved non-disparagement clauses in FLSA settlement agreements that include a

"'carve-out' for truthful statements about plaintiffs' experience litigating [the] case."  *Cortes v.*

*New Creators, Inc.*, No. 15-cv-5680 (PAE), 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016);

*see Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-cv-4259 (RA), 2015 WL 9162701, at *3

(S.D.N.Y. Dec. 15, 2015).  Here, the proposed "carve-out" language is even broader—not only

are Plaintiffs permitted to make truthful statements about their experience litigating this case, but

Plaintiffs are permitted to make *any* truthful statement about Defendants, because the non-

disparagement clause only prohibits the parties from making *false* statements that are derogatory,

disparaging, or defamatory.  Accordingly, the non-disparagement clause in the proposed

agreement contains sufficient allowances to permit Court approval.

The proposed settlement provides for Plaintiffs' counsel to receive $22,276.61 in fees and

costs.  *See* ECF No. 81-1 at 2.  With respect to attorneys' fees, the *Cheeks* Letter asserts that the

retainer agreements, *see* ECF No. 82-1 at 2-13, originally entitled Plaintiffs' counsel to one-third

of any recovery, but Plaintiffs' counsel reduced the contingency fee to 25 percent, for a proposed total of $21,250.  *Cheeks* Letter at 5.  "Courts in this District routinely award one third of a settlement fund as a reasonable fee in FLSA cases."  *Santos*, 2021 WL 431451, at *2 (quotation marks and brackets omitted).  Case law in this District provides, however, that "when awarding fees on a percentage-of-the-fund basis, the appropriate denominator is the total settlement *net* of costs."  *Beckert v. Ronirubinov*, No. 15-cv-1951 (PAE), 2015 WL 8773460, at *3 (S.D.N.Y. Dec. 14, 2015) (citation omitted) (emphasis in original).  Here, Plaintiffs' counsel has erroneously calculated the fee amount using the total settlement *inclusive* of costs ($85,000 × 0.25 = $21,250).  That calculation error is addressed and remedied below.

"[E]ven when the proposed fees do not exceed one third of the total settlement amount, courts in this Circuit use the lodestar method as a cross check to ensure the reasonableness of attorneys' fees."  *Santos*, 2021 WL 431451, at *2 (quotation marks omitted).  Appropriately, Plaintiffs' counsel has submitted contemporaneous time records to substantiate the fee application.  *See Fisher*, 948 F.3d at 600 ("The fee applicant must submit adequate documentation supporting the requested attorneys' fees and costs.").  Applying the lodestar method, Michael Ranis, an attorney with 34 years of experience, spent 213 hours working on this case.  *Cheeks* Letter at 5; ECF No. 81-4 at 2-7.  Mr. Ranis suggests that an appropriate hourly rate for his work, given his level of experience, would be $250 per hour.  *See Cheeks* Letter at 5. This figure is certainly within the range of hourly rates that have been deemed reasonable in this District.  *See, e.g.*, *Rios v. Louya Corp.*, No. 14-cv-6800 (GHW), 2015 WL 5918194, at *3 (S.D.N.Y. Oct. 8, 2015) ("Courts in this district have generally determined that the range of appropriate fees for experienced civil rights and employment law litigators is between $250 and $450.").  At these figures, the total lodestar amount for attorneys' fees would have been $53,250,

and the proposed fee represents approximately 40 percent of the lodestar amount, which is fair

and reasonable given the facts and circumstances of this case.  *See Gervacio v. ARJ Laundry

Servs., Inc.*, No. 17-cv-9632 (AJN), 2019 WL 330631, at *3 (S.D.N.Y. Jan. 25, 2019) ("The true

lodestar amount is therefore greater than the fee award contained in the settlement agreement. As

a result, the Court does not disturb the calculation of attorneys' fees . . . .").[4]

With respect to costs, counsel in FLSA cases may be awarded reasonable out-of-pocket

expenses that are properly substantiated.  *See, e.g.*, *Cortes*, 2016 WL 3455383, at *6 ("Court fees

reflected on the Court's docket are sufficiently substantiated, as are costs for which a claimant

provides extrinsic proof, such as invoices or receipts.") (citations omitted).  Plaintiffs' counsel

does not set forth a specific request for costs in the *Cheeks* Letter—rather, he states that the costs

were "negligible to date."  *Cheeks* Letter at 5.  But Counsel does provide receipts and invoices

showing that the total costs—for the filing fee, service of process, mailings to clients, and expert

services—are $1,039.80.  *See* ECF No. 81-6 at 2-4.  The Court finds that the request for costs is

reasonable, as the costs are sufficiently substantiated and "of the type commonly reimbursed by

courts in this District."  *Cortes*, 2016 WL 3455383, at *6.

Confusingly, adding the total costs to the improperly calculated fee amount proposed in

the *Cheeks* Letter would result in a total payment to counsel that exceeds the figure contemplated

in the proposed settlement agreement.  To reach the agreed-upon total figure for costs and fees,

Plaintiffs' counsel must be awarded approximately 25.3 percent of the total settlement amount:

$85,000 - $1,039.80 (for costs) = $83,960.20; $83,960.20 x approximately 25.3 percent =

$21,236.81; $21,236.81 (fees) + $1,039.80 (costs) = $22,276.61.  This total figure is entirely

---

[4] Because the Court finds the requested fees to be reasonable, it will not address whether
the number of hours expended on this case, as reflected in Plaintiffs' counsel's billing records, is
itself reasonable.

appropriate, as a contingency fee of approximately 25.3 percent of the total settlement fund is considerably less than the one-third percentage for attorneys' fees routinely awarded in this District.

## CONCLUSION

For the reasons set forth above, the Court finds the proposed settlement to be fair and reasonable, and the settlement agreement as filed at ECF No. 81-3 is hereby APPROVED.

Plaintiff's counsel is to receive $22,276.61, with $21,236.81 allocated to attorneys' fees and $1,039.80 to costs.  Plaintiff is to receive the balance, $62,723.39.

The Court also approves the proposed Stipulation and Order of Dismissal with prejudice, *see* ECF No. 81-3 at Ex. A (ECF page 19 of 19), as to form, but the Court cannot sign the stipulation as presented because it has not been signed by counsel for the parties.  The parties are hereby directed to re-submit a signed version of the proposed stipulation via ECF with an updated date line and with the signatures of counsel by no later than March 3, 2022; once the Court receives that filing, it will be signed and docketed promptly.

The Clerk of the Court is respectfully directed to terminate all pending motions in this action and close the case.

Dated:  March 1, 2022
      White Plains, New York

                                    **SO ORDERED.**

                                    _____

                                    ANDREW E. KRAUSE
                                    United States Magistrate Judge